RECEIVED

2006 SEP -8  A 10: 00

## UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA

U.S. DISTRICT CLERK
MIDDLE DISTRICT
ALA.

Debra Joyce Clackler 159516

v.                                    Civil Action Number: 2:06-cv-00172-WHA

Gladys Deese et. al.,

### Memorandum of Law in Opposition to Defendants

### Summary Judgment Request and Special Report

Plaintiff Clackler respectfully submits this memorandum of law in opposition to the

defendants' summary judgment request and special report with her exhibits including

a declaration pursuant to 28 U. S. C. Section 1746.

Pursuant to 28 U. S. C. 1331 and 1343 (a) (3) this court has jurisdiction over plaintiff's

federal claim.

### Statement of the Case

This is a Section 1983 action filed by a prisoner at Julia Tutwiler Prison for Women

seeking damages, a declaratory judgment, and injunctive relief based on inadequate

medical care, denial of procedural due process, and denial of medical care.

Defendants have filed a request for summary judgment as to plaintiff's inadequate

medical care claim against defendants Warden Gladys Deese, Deputy Warden Frank

Albright and Dr. Samuel Englehardt, arguing that their conduct did not violate plaintiff's

constitutional rights.

### Statement of Facts

The plaintiff's declaration submitted in response to the defendants' request states that

on June 20, 2004, Dr. Englehardt failed to render adequate medical attention for her

lipoma and bowel obstruction. Dr. Engleardt chose to treat the bowel obstruction and lipoma by prescribing laxatives and monitoring, an easier but less effective method of medical care. The problem continued so plaintiff requested medical care again and was treated by Dr. Peasant on July 17, 2004. Dr. Peasant said that he thought plaintiff might have chronic appendicitus and ordered a sonogram. Plaintiff was paged to healthcare for an appointment with Dr. Englehardt on July 20, 2004. Dr. Englehardt told plaintiff that he was canceling the sonogram, because he preferred not to do one at that time. Dr. Englehardt prescribed Zantac, Tylenol and Donnatal. Plaintiff reported to pill line for three days and was unable to get the prescribed medication, because the order was not transcribed and recorded on her MAR. Dr. Englehardt ignored plaintiff's obvious medical attention and treated the symptoms. The responses received did not provide the treatment needed. Then plaintiff was transported to South Louisiana Correctional Center on October 14, 2004, even though there was a note in her medical file which stated that she could never transfer out of state. Shortly after plaintiff arrived at South Louisiana Correctional Center, she went to medical for an intake screening. The nurse made plaintiff an appointment with the doctor for an evaluation of the mass in her left side. Plaintiff saw Dr. Tasson on November 2, 2004. Dr. Tasson diagnosed the mass in plaintiff's left side as a lipoma which needed to be surgically removed. Dr. Tasson said that plaintiff needed surgery as soon as possible, because the lipoma was a fatty tumor which would continue to grow and choke or block her organs. Plaintiff was put on the referral list to see an outside doctor at UMC, but this never happened. Plaintiff continued to have problems with constipation and pain and swelling in her left side and upper abdomen, so she signed up to see the doctor on February 6, 2005. Then on February 7, 2005, plaintiff began having diarrhea. On February 8, 2005, the

diarrhea began to slow down, and plaintiff started passing a grass-green, gel-like substance. Plaintiff was screened on February 9, 2005. Nurse Michelle Dugas scheduled an appointment for plaintiff to see the doctor, and she saw Dr. Tasson on February 11, 2005. The Director of Nursing, Michelle Maxie, told plaintiff that they could not do anything for her, because Alabama would not allow them to do surgery. Michelle Maxie also told plaintiff that she would be transported back to Alabama, and that they were aware of her problem.  Dr. Tasson prescribed Zantac, Ducolax and Colace. After eating lunch on February 12, 2005, plaintiff was in intense pain and notified Officer Goutreau.  Officer Goutreau contacted medical, and the nurse on duty refused to see plaintiff.  The nurse informed Officer Goutreau that she could not do anything for plaintiff. Plaintiff was transported back to Tutwiler on March 25, 2005.  Upon her arrival at Tutwiler, plaintiff requested medical attention repeatedly.  Plaintiff saw Dr. Peasant on April 12, 2005. Dr. Peasant ordered a sonogram and mammagram and prescribed Metamucil.  Plaintiff was unable to get the Metamucil, because the doctor's orders were not transcribed and recorded on her MAR.  See Inmate Request Slip # N176,  Ex. F-1. Plaintiff did not have the sonogram. See PHS1183,  Ex. F-1.  On May 16, 2005, plaintiff had a consultation with Dr. Daly at Montgomery Surgical Center.  Dr. Daly recommended that the lipoma be surgically removed.  Plaintiff had the surgery on June 24, 2005, at Montgomery Surgical Center.  Prior to the surgery, the medical staff discovered that plaintiff had a low heart rate, which had already dropped to forty.  The doctors told plaintiff that they could do one of two things:  Postpone the surgery or give her some medication to increase her heart rate and proceed with the surgery.  The doctors opted to do the latter and instructed plaintiff to make Prison Health Services aware of her low heart rate, so they could run some tests to determine the problem.

In a letter to Dr. Englehardt, Dr. Daly stated that he would like to see plaintiff again in a few months to reexamine her abdomen. Even though plaintiff's abdominal pain has continued to be a problem, she was not scheduled for another appointment with Dr. Daly regarding this problem. See PHS0294, Ex. G-1. Prison Health Services was first notified about plaintiff's low heart rate on July 21, 2005. After plaintiff returned from surgery, her irregular heart rate was noted on PHS Daily Assessment Sheet on June 26, 2005 (PHS0013, Ex. E-3-1). Also PHS Vital Sign Flow Sheet reflects her low heart rate (PHS0011, Ex. E). The issue regarding plaintiff's heart rate is still unresolved. Plaintiff's requests for a mammogram were ignored in the beginning, but she had a mammo-gram on July 1, 2005. Therefore this is no longer a problem. Plaintiff requested medical care for excessive, irregular, vaginal bleeding on August 22, 2005. Dr. Englehardt treated her for a hormone imbalance on September 8, 2005. Dr. Englehardt prescribed provera which stopped the bleeding temporarily, but the bleeding returned as soon as she stopped taking the Provera. On November 8, 2005, Dr. Englehardt treated plaintiff's bleeding again with Provera. When plaintiff saw Dr. Englehardt for a follow-up visit on December 29, 2005, she had had two normal menstrual cycles. Then plaintiff skipped her next four menstrual cycles, and the excessive bleeding returned on the fifth month and continued for six weeks. Plaintiff's back and abdominal pain and swelling increased during the four months that she skipped he menstrual cycles, and she frequently has vaginal pain which goes to her naval when sitting. So it is obvious that the provera is not working, and plaintiff has continued to request medical care for this problem. Plaintiff is still suffering with the bowel obstruction. The abdominal and back pain is severe and continuous, and it has progressed to the back of plaintiff's head and is impairing

her ability to think. The defendants affadavits are a direct contrast to plaintiff's declaration. The defendants contend that Dr. Englehardt timely and appropriately treated each and every medical complaint asserted by plaintiff and assured that plaintiff did not have any serious medical condition. The defendants contend that Dr. Englehardt did not ignore or fail to provide plaintiff with medical care. The defendants contend that it is readily apparent that Dr. Englehardt has not acted with deliberate indifference to any serious medical need or possessed actual knowledge of an excessive risk to plaintiff's health or safety. The defendants contend that based on Dr. Englehardt's actions, it is readily apparent that a timely and appropriate response was given to plaintiff's requests for a mammogram, and that Dr. Englehardt did not ignore or fail to provide plaintiff with medical care. The defendants contend that plaintiff's mammogram revealed that she does not have a serious medical need, but rather, benign fibrocystic cysts, which are non-cancerous. The defendants contend that plaintiff has never been diagnosed with a low heart rate or showed symptoms indicating that she has a low heart rate; therefore, Dr. Englehardt has not failed to treat her alleged heart condition. The defendants contend that in the absence of any evidence, Dr. Englehardt could not have acted deliberately indifferent to any serious medical need or to have possessed actual knowledge of an excessive risk to plaintiff's health or safety. The defendants contend that plaintiff's medical records indicate that the medications prescribed to treat plaintiff's vaginal bleeding were effective and continue to be effective in remedying this problem. The defendants contend that plaintiff did not exhaust her administrative remedies prior to the filing of this action. The defendants contend that responses to plaintiff's grievances were provided in

a timely manner. The defendants contend that plaintiff did not submit any appeal after receiving a response to any medical complaint she filed during her incarceration at Tutwiler.

## Argument

The standards for summary judgment are well settled. The moving party bears the burden of establishing that there are no genuine issues of material fact in dispute. See, e. g., Consarc Corp v. Marine Midland Bank, N. A., 996 F. 2d 568, 572 (2d Cir. 1993). This standard precludes the court from resolving disputed issues of fact. Instead, the court must deny summary judgment if there are material issues. See, e. g., Knight v. U. S. Fire Ins. Co., 804 F. 2d 9, 11 (2d Cir. 1986), cert. denied, 480 U. S. 932 (1987). In assessing whether there are factual issues, the court is to view the evidence in the light most favorable to the non-moving party and draw all permissible inferences in that party's favor. See e. g., Anderson v. Liberty Lobby, Inc. 477 U. S. 242, 247 (1986). Assessments of credibility, conflicting versions of events and the weight to be assigned to evidence are for the jury, not the court. See, id. at 255.

## I.There are genuine issues of material fact that preclude summary judgment for the defendants on the plaintiff's inadequate medical claim.

Summary judgment is to be granted only if the record before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56 (c) Fed. R. Civ. P. "A material fact is one that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 248 (1986).

The affadavits/declaration of the plaintiff and the defendants are squarely contradictory

as to what medical care was provided, when the medical care was provided, why the particular treatment was chosen, and the manner in which the treatment was provided. The allegations in the plaintiff's declaration definitely portray inadequate medical care. This is clearly a factual statement.

The factual dispute is also material under the governing law, whether the inadequate medical care violates the Eighth Amendment depends on whether it was applied in a good-faith effort to maintain or restore good health or maliciously and sadistically to cause harm. The Eighth Amendment prohibits the unnecessary and wanton infliction of pain and is the source of claims for inadequate medical care. Estelle v. Gamble, 429 U. S. 97, 103 (1976). This is true regardless of whether the medical care is provided by governmental employees or by private medical staff under contract with the government. West v. Atkins, 487 U. S. 42, 57-58 (1988); Richardson v. McKnight, 521 U. S. 399, 177 S. Ct. 2100 (1997). The facts alleged by the plaintiff are evidence that the defendants were acting "maliciously and sadistically to cause harm," they would support a jury verdict in the plaintiff's favor.

## II. The complaint states a claim under the Eighth Amendment.

The supreme court has ruled that "deliberate indifference to serious medical needs of prisoners "is cruel and unusual punishment. Estelle v. Gamble, 429 U. S. 97, 104 (1976). The complaint alleges facts that state a constitutional claim under this standard.

### A. The plaintiff has a serious medical need.

The defendants contend that Dr. Englehardt timely and appropriately treated each and every medical complaint asserted by plaintiff and assured that plaintiff did not have any serious medical condition. Plaintiff is continuously suffering with bowel obstruction and pain and swelling. Also plaintiff frequently suffers with fainting, nausea and vomiting for

hours before she is able to have a bowel movement, even though she is taking axatives. Plaintiff began suffering from this condition on June 20, 2004, and this has been a continuous problem. Dr. Englehardt did nothing to determine the cause. Dr. Englehardt chose to treat plaintiff's condition by prescribing laxatives and monitoring, an easier but less effective method of medical care. The responses that plaintiff received has not provided the treatment needed and contributed to her laxative dependency. Waldrop v. Evans, 871 F. 2d at 1033 (grossly incompetent or inadequate care can constitute deliberate indifference.) West v. Keve, 571 F. 2d 158, 162 (3d Cir. 1978) deliberate indifference standard met when doctor chooses easier, but less effective method of medical care. Dr. Englehardt failed to respond by providing plaintiff with inadequate medical treatment. Dr. Englehardt's deliberate indifference has caused plaintiff unnecessary pain and made it very difficult to do basic things such as eating and sleeping. According to Black's Medical Dictionary, bowel obstruction is a life-threatening illness. See page 516.

## B. Plaintiff was diagnosed with a low heart rate and showed signs indicating that she has a low heart rate.

Defendants argue that plaintiff has never been diagnosed with of showed symptoms indicating that she has a low heart rate. In the absence of any evidence that plaintiff has a low heart rate or that Dr. Englehardt has failed to treat plaintiff's alleged heart condition, Dr. Englehardt cannot said to have acted deliberately indifferent to any serious medical need or to have possessed actual knowledge of an excessive risk to plaintiff's health or safety. (Special Report Initial Disclosures and Answers of Defendants page 30 #3.) Prior to plaintiff's lipoma surgery at Montgomery Surgical Center on June 24, 2005, the medical staff discovered that she had a

low heart rate which had already dropped to forty. The doctors instructed plaintiff to make Prison Health Services aware of her low heart rate, so they could run some tests and determine the problem. Prison Health Services was first notified on July 21, 2005. After plaintiff returned from the surgery, her irregular heart rate was noted on PHS' Daily Assessment Sheet on June 26, 2005 (Ex. E, # PHS0013). Also, PHS' Vital Sign Flow Sheet reflected her slow heart rate (Ex. E, # PHS0011), along with several sick-call requests ( See Ex. E # PHS0117, PHS0170, PHS0160, PHS0156, PHS0154, PHS0174, PHS0145, PHS1180, PHS1181, PHS1182.) The issue regarding plaintiff's heart rate is still unresolved. Defendants were notified by inmate request forms, complaints, and grievances. McElligott v. Foley 182 F. 3d 1248, 1256 (11th Cir. 1999) (Inmate's "nearly constant complaints about the pain, he was having deterioration and weight loss, along with doctor's examination were sufficient to put doctor on notice or substantial risk of serious harm.)

### C. Medication prescribed to treat plaintiff's irregular bleeding was ineffective and did not resolve the problem.

The defendants contend that plaintiff's medical records indicate that the medication prescribed to treat plaintiff's irregular bleeding was effective and continue to be effective in remedying this problem. (Special Report Initial Disclosures & Answers of Defendants page 31, Par. 2.) This is not true because the Provera was only a temporary solution. After taking the provera, plaintiff had two normal menstrual cycles and skipped her next four cycles. The following month, the excessive bleeding returned and continued for six weeks. Plaintiff's back and abdominal pain and swelling increased when she skipped her menstrual cycles. Plaintiff frequently has vaginal pain which goes to her naval when sitting.

### D. Plaintiff's requests for a mammogram were not answered in a timely and appropriate manner.

The defendants contend that based on Dr. Englehardt's actions, it is readily apparent that a timely and appropriate response was given to plaintiff's requests for a mammogram and that Dr. Englehardt did not ignore or fail to provide plaintiff with medical care. (Spec. Rep. Init. Disc. and Ans. of Def., page 32, Par. 2.) Plaintiff's first request for a mammogram was August 15, 2004. On August 20, 2004, Ms. Wright responded, "You will be added to the list we scheduled." Plaintiff never had this mammogram, because she was transported to South Louisiana Correctional Center on October 14, 2004. Plaintiff was tranported back to Tutwiler on March 25, 2005, so she began requesting a mammogram again on March 29, 2005. On March 31, 2005, plaintiff received the following request to her reply for a mammogram: "When you have your annual, if the MD wants to schedult your mammogram, he will order it. However, if you are in pain or feel a lump in breast, don't hesitate. Sign up for sick call." After signing up for sick call three times, plaintiff saw Dr. Peasant and a mammogram was ordered. Plaintiff had a mammogram on July 1, 2005, so this is no longer a problem.

### E. Plaintiff was denied adequate medical care. Defendants contend that Dr. Englehart did not ignore or fail to provide plaintiff with medical care.

Plaintiff continued to have problems with constipation and pain and swelling in her left side and upper abdomen, so she signed up to see the doctor on February 6,2005. Then on February 7, 2005, plaintiff began having diarrhea. On February 8, 2005, the diarrhea began to slow down, and the plaintiff started passing a grass-green, gel-like substance. Plaintiff was screened on February 9, 2005. Nurse Michelle Dugas put plaintiff's name on the doctor's list, and she saw Dr. Tasson on Februaary 11, 2005.

The Director of Nursing, Michelle Maxie, told the plaintiff that they could not do anything for her, because Alabama would not allow them to do the surgury. Michelle Maxie also told the plaintiff that she would be transported back to Alabama, and that they were aware of her problem. Evidentally, Warden Deese and Deputy Warden Albright were making these decisions, because Warden Deese told plaintiff on December 8, 2004, that she would talk to medical and make her decision based on the information which sshe received. This shows that the defendants hindered the physician's performance of his duties. Dr. Tasson prescibed Zantac, Ducolax and Colace. Plaintiff filed a grievance on February 11, 2005, and it was rejected. Warden Viator responded, "If you have a medical concern, you need to fill out a sick-call request, not a grievance." (Ex. H-1) After eating lunch on February 12, 2005, plaintiff was in intense pain and notified Officer Goutreau. Officer Goutreau contacted medical, and the nurse on duty refused to see plaintiff. The nurse informed Officer Goutreau that there wasn't anything she could do for the plaintiff. Robinson v. Moreland, 655 F. 2d 887 (8th Cir. 1981) The knowledge of the need for medical care international refusal to provide that care has consistantly been held to surpass negligence and constitute deliberate indifference. Ramos v. Lamm, 639 F, 2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041, 101 S. Ct. 1759, 68L Ed. 2d 239 (1981) the court said:
" Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from recieving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment.

**F. The defendants contend that a lipoma is a benign, non-life threatening tumor that will result in no harm if it is left untreated. The defendants further state that the most bothersome**

symptom associated with lipoma is the location or the
increased size that makes the lipoma noticeable by other
individuals (Englehardt affidavit at #6).

Lipomas can easily be confused with the tumors and require further test to exclude
the possibility of a malignancy.  More than half of all gastrointestinal lipomas are in
the esophagus, stomach, and small intestine. Duodenal lipomas may cause severe
hemorraging or intussusception.  Mediacal therapy includes excision of tumors in the
upper gastrointestinal tract, esophagus, stomach, duodenum, or colon (Ex. A#2).

## G. The defendants contend that plaintiff did not exhaust her administrative remedies prior to the filing of this action (Spec. Rep. Init. Disc. of Def., page 35, par. 2).

This is not true, because Julia Tutwiler Prison for Women does not have any admin-
strative remedies for inmates to exhaust. Plaintiff has exhausted all available remedies.
When plaintiff requested formal grievance forms and grievance appeal forms, she
was frequently told that the only grievance forms available were informed grievance
forms. However, plaintiff did manage to get three formal grievance forms and one
grievance appeal form, and this is the only one that she is ever received.  Grievance
appeal forms forms are not made available to inmates at Julia Tutwiler Prison, even
when requested.  (See Ex. D)

## H. Defendants argue that plaintiff has only submitted four informal grievance forms during her incarceration and that responses to her grievances were provided in a timely manner (Strickland Affidavit #9).

This is not true.  The evidence further establishes that the defendants have failed to
acknowledge plaintiff's other requests, complaints, grievances and grievance appeal.

(See medical log; page 2 #24; page 3 #37; page 5 #52, 53; page 10 #89, 91; page 11 #92; page 12 #112; page 13 #113, 115, 118; page14 #124, 125; page 15 # 129; Ex. C)  This is obviosly being done to assure that plaintiff's claim will be dismissed for failure to exhaust all remedies; but you can clearly see that plaintiff has exhausted all remedies within her means.

**I. Defendants contend that plaintiff did not submit any grievance appeal after receiving a response to any medical complaint filed suring her incarceration at Tutwiler (Spec. Rep. Init. Disc. 7 Ans. of Def., page 35, par. 2).**

This is not true.  Plaintiff filed a grievance appeal on August 28, 2005.  Prison Health Services did not respond or return a copy of plaintiff's grivance appeal (Med. log page 8, #80).

**J. Defendants contend that plaintiff refused all meds on November 11, 2004.**

Dr. Tasson saw plaintiff and discontinued all her medications on November 11, 2004.  However, plaintiff requested medical care on november 11, 2004, and was not screened. It is obvious that plaintiff was not screened, because the sick-call request was not signed by plaintiff or the nurse who conducted the screening. (See ex. H-3, PHS0384)

**K. Defendants contend that inmates' MARs are maintained and filed in the individual inmate's record.  Once the medications are dispensed,the medical staff records the dispensing of medication by placing her initials in the space provided on the corresponding MAR (page 3, #1, id).**

Plaintiff has reported to pill line many times and could not get her prescribed medications, because the doctor's orders has not been transcribed and

recorded on her MAR (Ex. F-1). So plaintiff continued to go through sick-call procedure until the medications were recorded. There are also times when medications are dispensed to inmates and the nurse neglects or refuses to initial he MAR (See grievance #87, page 10, medical log).

## L. Defendants contend that responses to plaintiff's grievances were providedin a timely manner. (Strickland Affidavit #9).

This can not be true. Plaintiff filed eleven grievances and one grievance appeal, and Prison Health Services states that she has only filed four. Plaintiff did not receive a response and copy of all grievances which she filed.

In February 2004, plaintiff spoke with Warden Albright about her medical problems, appointment with Dr. Tasson, referral to see an outside doctor, grievance, and being transported back to Alabama. Then Warden Albright told plaintiff that she would not be going anywhere until she saw an outside doctor. Prison heath Services is responsible, pursuant to an agreement between it and the Alabama Department of Corrections, for providing medical care to those housed at Julia Tutwiler Prison. Dr. Samual Englehardt is the prison doctor employed by Prison Health Services to treat everyone regardless the nature of their illness. Dr. Englehardt was the primary doctor at the time of these incidents. According to Dr. Michael Pusis of Illinois, and expert in correctional health care, Dr. Englehardt is a retired obstetrician who is unqualified in internal medicine and should not be providing internal medical care at Tutwiler (See Ex. B-11). Dr. Englehardt is sued in his official and individual capacity as the doctor of Tutwiler Prison at the time of the incidents forming the basis of this lawsuit. In this case, the plaintiff alleges that the defendants knew that medical care was neccesary but simply refused to provide it. Intentional failure to provide service acknowleded to be neccesary is the deliberate indifference proscribed by the

Constitution. See Woodall v. Foti, 648 F. 2d 268, 272-73 (5th Cir. 1981). Tutwiler
Prison for women has duty to provide adequate medical care both under the United
States Constitution and under the Alabama law. thus, if Prison Heath Services
and/or its employees have a responsibilty to make final decisions regarding a
requirement that a prisoner can not receive adequate medical care because it is a
financial burden on the health-care provider, then their acts, policies and customs
become official policy. Therefore, making Prison health Services and its employees
liable for the inadequate medical care of the plaintiff. Hearn v. City of Gainsville, 688
F. 2d 1328 911th Cir. 1982) The court made it clear that where a govermental entity
delegates the final authority to make decisions than those decisions necessarily
represent official policy. 688 F. 2d at 1334.

Prison officials are only responsible for medical need that are serious. Officials
violate the Constitution only when they act with deliberate indifference: i.e., when
they call actually know about an inmate's serious medical need but fail to respond
reasonably by providing adequate medical treatment.

Must show: (1) serious medical need (2) official's actual knowledge of your serious
medical need (3) official's failure to respond reasonably by providing adequate
medical care (4) that the official's deliberate indifference caused injury ot is likely to
cause injury in the future.

Therefore, Warden Deese and Albright are being sued in their individual and official
capacity. A "serious" medical need can be defined two ways: A medical need is
"serious" when it "has been diagnosed by a physician as mandating treatment or... is
so obvious that even a lay person could easily recognized the necessity for a doctor's
attention." A "serious" medical need exists when " the failure to treat a prisoner's

condition could result in further significant injury or or the unnecessary and wanton infliction of pain." Plaintiff is suffering with two serious medical conditions. Plaintiff's bowel obstruction is so obvious that even a lay person could see her necessity for medical attention. Plaintiff is continuously suffering with back and abdominal pain and swelling. Plaintiff frequently suffers with fainting, nausea and vomiting for hours before she is able to have a bowel movement, even though she is taking laxatives. This has been a continuous problem since June 20, 2004. Deliberate indifference was met when Dr. Englehardt chose to treat plaintiff's medical condition by prescribing laxatives and monitoring, an easier but less effective method of medical care. Waldrop v. Evans, 871 F. 2d at 1033 (grossly incompetent or inadequate care can constitute deliberate indifference); West v. Keve 571 F. 2d 158, 162 (3d Cir. 1978) Deliberate indifference standard met when doctor chooses easier, but less effective method of medical care. When plaintiff went to Montgomery Surgical Center for lipoma surgery on June 24, 2005, the medical staff discovered that she had a low heart rate which had already dropped to forty. (See Ex. J-1). The doctor's instructed plaintiff to make Prison Health Services aware of her low heart rate, so they could run some tests and deterime the problem. Prison Health Services was first notified on July 21, 2005. After plaintiff returned from surgery, her irregular heart rate was noted on PHS Daily Patient Assessment Sheet on June 26, 2005 (PHS0013, Ex. E). Also, PHS Vital Sign Flow Sheet reflects her heart rate (PHS0011, Ex. E), along with several sick-call requests (Ex. E # PHS0160, PHS0156, PHS0154, PHS0150 and PHS0141). Warden Albright was notified by inmate requests, complaints and grievances (Ex. C, medical log page 8, #78), and he did not reply to any of them. Reed v. McBride, 178 F. 3d 849, 854 (7th Cir. 1999) Inmate's three letters of complaint put officers on notice

of his medical condition.  Defendants failed to respond reasonably by providing plaintiff with adequate medical treatment. Defendant's deliberate indifference has caused plaintiff unnecessary pain and made it very difficult to do basic things such as eating, sleeping, and having a bowel movement.

Defendants are not entitled to immunity under the Eleventh Amendment to the U.S. Constitution and principles of qualified immunity.  The Federal courts have consistently ruled that government, state, and local, have an obligation to provide medivcal care to incarcerated indivuals (See Estelle, supra).  This duty is not absolved by contract with an entity such as PHS.  Although PHS has contracted to perform an obligation owed by the state, the state itself remains liable for any constitutional deprivation caused by the policies or customs of the HS.  In that sense, the state's duty is non-delegable. See Wilson v. Taylor, 733 F, 2d 1539, 1545 (11th Cir. 1984). Lack of funds for facilities can not justify an unconstitutional lack of competent medical care and treatment for inmates.  See Gates v. Collier, 501 F. 2d 1291 (5th Cir. 1974);  see also Miller v. Carson, 401 F. Supp. 835, 889-91 (M.D. Fla. 1975), aff'd 563 F. 2d 741 (5th Cir. 1977).

Additionally, if Broward County established or utilized a policy or custom requiring that inmates needing medical assistance obtain court orders and the result of that policy or custom played a role in the delay in treatment and deliberate indifference (Ancata v. PHS Inc., 769 F. 2d 706) shown toward Ancata, then the county may be liable.  See Burdin v. Duggan, 701 F. 2d 909 (1th Cir. 1983).  Furthermore, if the county permitted the sheriff and/or prison health officials that it contracted with to establish such a policy or custom, it may also be liable.  See Trezevant v. City of Tampa, 741 F. 2d 336 (11th Cir. 1984).  Such liable would not be based on notions

of respondent superior. The liability would be the result of the county's own policy. Monell V. N.Y. City Dept. of Soc. Sus., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

As to the defendant Robert Butterworth, he was sheriff at the time medical care was refused to Anthony Ancata. His liability, if any, would not necessarily be soley based upon respondent superior. If plaintiff can establish, as she alleged, that the sheriff was personally involved in the acts depriving Anthony Ancata of his constitutional rights, or that he breeched at duty imposed by state law and that that breech caused the plaintiff injury, then he would be responsible for his own act and/or policies. See Baskin v. Parker, 602 F 2d 1205 (5th Cir. 1979); Douthit v. Jones, 641 F. 2d 345 (5th Cir. 1981).

Finally, George Bresher, the sheriff at the time the case was filed, was sued in his official capacity as sheriff of Broward Coutny.

Defendants are not entitled to immunity under 42 U.S.C. Section 1983. A federal law, 42 U.S.C. Section 1983, allows anyone whose rights under fereral statues or the U.S. Constitution have been violated by a state official or state employees, you can sue them if they deprive you of any federal constitutional or statutory rights, for example, your rights to adequate medical care, to be free from assault, and to have reasonable access to the courts and the law. Defendants can be held liable on the theory of respondent superior under 42 U.S.C. 1983 fed. law, 42 U.S.C. Section 1983.

Defendants are not entitled to state-discretioary immunity Lyons v. State by Humphrey by Pung 366 N.W., 2d 621, 623 (Minn. App. 1985); Taylor v. Buff, 172 Cal. App. 3d 384, 384, 389, 218 Cal. Rptr. 249, 252 (Cal. App. 1985); Ferguson

v. Perry 593 So. 2d 273, 277-78 (Fla. App. 1992) (Inmate classification is discretionary actions but not ministerial ones.

Todaro v. Ward, 563 F. 2d 48, 52 (2d Cir. 1977) the court held unconstitutional a system in which medical screening was carried out by trained medical personnel , but under conditions that did not permit them sufficient time, facilities and information to make use of their training. 565 F. 2d at 50-51. If that practice is unconstitutional, surely the use of personnel who do not even have such training is also unconstitutional. (On this point, Todaro provides an analogy to the use of untrained personnel, and the brief explains the basis of this analogy.)

Defendants are not entitled to sovereign immunity under Constitution Alabama Code 1901, Section 14. The court has recognized that a state officer or employee may not escape individual tort liability by "arguing that his mere status as a state official cloaks him with the state constitutional immunity." Barnes v. Dale, 530 So. 2d 770, 781 ( Ala 1988) (quoting Tort Liability of State Officials in Alabama, 35 Ala L. Rev. 153) (1984). Clearly, a state officer or employee is not protected by Section 14, when he acts willfully, maliciously, illegally, fraudulently, in bad faith beyond his authority or under a mistaken interpretation of the law. See Lumpkin v. Colfield, 536 So. 2d 62, 65 (Ala 1988). In addition, a state official is not immune from a suit to compel the performance of a legal duty, a suit to enjoin the enforcement of an unconstitutional law, a suit to compel the performance of a ministral act, or a suit brought under the Declaratory Judgement Act. See DeStafney, 413 So. 2d at 393 (citing Aland v. Graham 287, Ala 226, 229, 250 So. 2d 677, 679 (1971) Gill 356 So. 2d at 1198; Milton v. Epsey 358 So. 2d 1201, 1203 (Ala 1978), Parker v. Amerson 519 So. 2d 442 1987 Ala. Lexis 5057 (Ala. 1987).

Qualified immunity shields an official in his individual capacity for damages if the
constitutional ot statuatory rights that you allege the official violated was not
"clearly established" at the time of violation. This definitely does not apply in this
case. Here, it was apparent that the Eighth Amendment prohibited defendants from
subjecting the plaintiff to substandard medical care which could result in
unnecessary pain and suffering and a risk to her health. Wst v. Keve 571 F. 2d
158, 162 (3d Cir. 1978) deliberate indifference met when doctor chooses easier,
but less effective method of medical care. Ancata v. PHS Inc. 769 F. 2d 700, 702
(11th Cir. 1985); Lewis v. Wallenstein 769 F. 2d 1173, 1183 (7th Cir. 1985) 10-15
Delay in responding to inmate having a heart attack showed deliberate indifference.
Shorrod v. Lingle 223 F. 3d 605, 611-12 (7th Cir. 2000) "If known that a patient
faces a serious risk of appendicitis, the prison official gives the patient an aspirin
and an enema and sends him back to his cell, a jury could find deliberate indifference
although the prisoner was not simply ignored." Dulany v. Carnahan, 132 F. 3d 1234,
1240-41 (8th Cir. 1997) "grossly incompetent or inadequate care can constitute
deliberate indifference in violation of the Eighth Amendment where the treatment
is so inappropriate as to evidence intentional maltreatment or a refusal to provide
essential care." McElligot v. Foley, 182 F. 3d 1248, 1257 (11th Cir. 1999) ("Jury
could find that treatment of Tylenol, Pepto-Bismol, and Anti-gas medications provided
to inmate suffering from severe stomach pains, and later diagnosed as having colon
cancer, was "cursory as to amount to no care at all"). "Cursory" means something
that is done quickly, but not done well. Hunt v. Uphaff, 199 F. 3d 12, 20 1224 (10th
Cir. 1999) (Fact that inmate "has seen numerous doctors" does not necessarily mean
"that he received treatment for serious medical needs, i.e. that treatment was

prescribed at all or that prescribed treatment was provided").

## III. Defendants are liable under 42 U. S. C. Section 1983.

A jail or prison official generally acts under color of state law whenever he is "on the job." The word official refers to any person charged with carrying out a government function, whether employed by the government or not. Even people who do not work directly for the government act "under color of state law" when they perform government functions. Thus, a private doctor who provides medical services to prisoners, pursuant to a contract with the state, acts under color of state law. Similarly, a corporation that administers medical services at a jail or prison, or even runs the entire facility, can be sued under Section 1983.

A doctor who refuses to provide treatment for a serious medical need causes a violation of your right to medical care. A supervisor, too, can personally participate in a violation. Similarly, if state law imposes on a warden a duty to protect the health and safety of inmates, and the warden disregards a substantial risk of serious harm at the prison, he will be liable under Section 1983. High-level officials are not shielded from liability for their direct acts or omissions simply because they supervise other officials. McElligott v. Foley, 182 F. 3d 1248,11255 (11th Cir. 1999). See Williams v. Vincent, 508 F. 2d 541, 544 (2d Cir. 1974) (alleged decision by prison doctors to simply close a wound caused by severing of ear rather than attempting to reattach ear could constitute deliberate indifference.); Sharrod v. Lingle, 223 F. 3d 605, 611-12 (7th Cir. 2000) ("If knowing that a patient has a serious risk of appendicitus,the prison official gives the patient an aspirin and an enema and send him back to his cell, a jury could find deliberate indifference although the prisoner was not simply ignored."); Dulany v. Carnahan 132 F. 3d 1234, 1240-41 (8th Cir. 1977).

## IV. Defendants are not entitled to relief under Section 1997e (e).

Defendants argue that plaintiff has not suffered any physical injury and is therefore not entitled to receive damages under 42 U.S.C. Section 1997e (e). This is plainly incorrect. As the plaintiff's declaration and medical records show, she suffered low heart rate, difficulty breathing, abdominal pain, back pain, fainting, nausea and vomiting as a result of the substandard medical care. These injuries are indisputably ":physical" in nature and more than de minimis. They have affected plaintiff's ability to do basic activities such as eating, sleeping, and having a bowel movement.

## V. Plaintiff's request for injuctive relief is not moot.

Finally, defendants contend that plaintiff's request for injunctive relief is moot. They have failed, however, to follow the doctors' orders for tests. They have scheduled appointments, but failed to keep them. Because injunctive relief remains necessary to correct this ongoing violation of the Eighth Amendment, the defendants' motion should be dismissed.

### Conclusion

For the reasons set forth above, this court should issue a preliminary injunction ordering defendants to provide medical means necessary to determine the cause of plaintiff's bowel obstruction, pack pain, and low heart rate and provide treatment needed.

### Settlement

Plaintiff will settle for the following: (1) Tests to determine problem with her bowels and treatment, (2) Tests to determine the cause of her low heart rate and treatment, (3) Tests to determine the cause of her back pain and treatment, and (4) Procedure to eliminate fibroid cysts in her uterus.

There is substantial evidence that the defendants disregarded an obvious risk of harm and serious medical need to the plaintiff. The defendant's failure to prevent adequate medical treatment makes them liable, and at a minimum, precludes summary judgement in their failure.

Done this ___4th___ day of _September_ , 2006.


_Debra Joyce Clackler_
**Plaintiff**

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for the

opposing parties a copy of the foregoing document by first-

class United States mail in a properly addressed envelope

with adequate postage thereon.  The individuals served are:

Office of the Clerk
United States District Court
P. O. Box 711
Montgomery, AL 36101-0711

Balch & Bingham
P. O. Box 18668
Huntsville, AL 35804-8668

Attorney General Troy King
11 South Union Street, Suite 310
Montgomery, AL 36130

This _4th_ day of _September_ , 2006.

_Debra Joyce Clackler_
               Petitioner